UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN PABST                                              CIVIL ACTION

VERSUS                                                  NO. 21-290

BP EXPLORATION & PRODUCTION                             SECTION: H(2)
INC., ET AL.

## ORDER AND REASONS

Before the Court is Plaintiff John Pabst's Motion to Stay (Doc. 24). For the following reasons, this Motion is **GRANTED**.

## BACKGROUND

Plaintiff initiated this action pursuant to the Back End Litigation Option ("BELO") of the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement ("MSA") entered in the Deepwater Horizon Oil Spill Litigation, MDL 2179.[1] The MSA provides the sole remedy for certain class members, including clean-up workers like Plaintiff, to sue Defendants BP Exploration &

---

[1] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179. The MSA can be found in the record of that case at Doc. No. 6427-1.

Production Inc. and BP America Production Company for "Later-Manifested Physical Conditions" ("LMPC"). LMPCs are defined as physical conditions allegedly caused by spill-related exposure and first diagnosed after April 16, 2012.[2]

The MSA sets out a unique procedure for initiating a BELO lawsuit. First, class members must submit a Notice of Intent to Sue ("NOIS") to the MSA Claims Administrator. The NOIS shall identify the LMPC and provide proof of the diagnosed condition and the date of first diagnosis. Once the NOIS is submitted, the Claims Administrator performs a basic review to confirm that it complies with the requirements of the MSA. If it does, the Claims Administrator sends the NOIS to Defendants for them to decide whether to mediate or not. If Defendants choose not to mediate, then the claimant has six months to file the BELO lawsuit.

In this case, Plaintiff was diagnosed with orbital lymphoma on July 20, 2017, and with a cortical cataract on July 10, 2018.[3] Plaintiff submitted his first NOIS based only on orbital lymphoma in June of 2020, and after following the above procedure, he filed the instant case in February of 2021.[4] On November 3, 2021, Plaintiff submitted a second NOIS, this time based on his cataract.[5] Now before the Court is Plaintiff's Motion to Stay the instant case

---

[2] *See* Case No. 2179, Doc. 6427-1 at 17–18 (Section II(VV)).
[3] *See* Docs. 15, ¶ 29; 24-3 at 23.
[4] *See* Doc. 1.
[5] *See* Doc. 24-3 at 29.

while the Claims Administrator reviews the second NOIS.[6] Defendants oppose staying this case.[7]

## LAW AND ANALYSIS

Plaintiff argues that a stay is necessary because it would be inefficient for this case to proceed through discovery when in the future Plaintiff will likely initiate another BELO lawsuit against Defendants based on his second NOIS. A failure to stay this case, according to Plaintiff, could lead to duplicative discovery and *Daubert* motions, as well extra costs from experts. Plaintiff contends that the most prudent option is to stay the instant case until the second BELO suit is filed and can be consolidated with this case. Defendants counter that Plaintiff was diagnosed with cataracts before filing his first NOIS, and his failure to include the ailment as an LMPC in the past does not justify a stay in the present. Defendants also argue that a stay prejudices them by preventing timely resolution and requiring additional expenses.

In deciding whether to issue a stay, district courts consider several factors, including "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and

---

[6] *See* Doc. 24.
[7] *See* Doc. 25.

on the court."[8] These factors weigh in favor of a stay. First, this case is at an early stage; only one deadline from the Scheduling Order has passed. Second, while the Court shares Defendants' discontent with Plaintiff's failure to include his cataract diagnosis in the first NOIS, any concerns about prejudice are misplaced. There is no guarantee that staying the instant case will be less timely and more expensive than litigating two similar cases back to back. Third, a stay may lead to consolidation, which will simplify the issues and potentially necessitate one trial rather than two. Finally, a stay will reduce the burden of litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Stay (Doc. 24) is **GRANTED**. **IT IS ORDERED** that this case is hereby **STAYED** until the Claims Administrator addresses Plaintiff's new NOIS submitted on November 3, 2021, and until the Defendants elect to mediate or not, if necessary.

**IT IS FURTHER ORDERED** that Plaintiff's pending Ex Parte Motion for Extension of Deadlines for Expert Disclosures (Doc. 26) is **DENIED AS MOOT**.

---

[8] Lawrence v. Jefferson Par. Pub. Defs., 20-1615, 2021 WL 6063253, at *2 & n.15 (E.D. La. Dec. 22, 2021).

New Orleans, Louisiana this 6th day of January, 2022

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**